Eastern District of Kentucky
F I L E D

SEP 2 3 2019

AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

DAMIEN A. SUBLETT,                    )
                                      )
        Plaintiff,                    )        Civil No. 0:18-084-HRW
                                      )
v.                                    )
                                      )
JASON S. HOWARD, et al.,              )        **MEMORANDUM OPINION**
                                      )        **AND ORDER**
        Defendants.                   )
                                      )

*** *** *** ***

Plaintiff Damien A. Sublett is an inmate confined at the Green River Correctional Complex located in Central City, Kentucky. Proceeding without an attorney, Sublett filed a civil rights action pursuant to 42 U.S.C. § 1983 against Jason S. Howard, a Correctional Officer at the Little Sandy Correctional Complex ("LSCC") in Sandy Hook, Kentucky. [D.E. No. 1] In his original complaint, Sublett asserts claims for violations of Sublett's First Amendment rights based on allegations that Howard retaliated against Sublett for making an "oral grievance" complaining of Howard's alleged discriminatory treatment of Muslim inmates. After Howard responded to Sublett's complaint by filing a motion for summary judgment, [D.E. No. 14], Sublett was granted leave to file a supplemental complaint

1

adding a separate claim of retaliation against Audria Lewis, a correctional officer at LSCC. [D.E. No. 15, 16][1]

Defendants, through counsel, have each filed motions for summary judgment. [D.E. No. 14, 21] In response, Sublett has filed three responses [D.E. No. 19, 24, 25] and a motion for leave to file a sur-reply. [D.E. No. 22] Howard has filed a reply in further support of his motion. [D.E. No. 20] Lewis has not filed a reply in further support of her motion and the time for doing so has expired. Thus, this matter has been fully briefed and is ripe for review.

As a preliminary matter, without seeking leave of Court, Sublett filed two separate responses in opposition to the motion for summary judgment filed by Lewis. [D.E. No. 24, 25] In addition, in response to the reply filed by Howard [D.E. No. 20], Sublett filed a motion for leave to file a sur-reply. [D.E. No. 22] The Court's Local Rules do not contemplate or allow the filing of a sur-reply, LR 7.1(c), (g), and hence such filings are not permitted absent leave of the Court. Such leave is only granted to address arguments or evidence raised for the first time in a reply.

---

[1] In its Order granting Sublett's request to supplement his complaint, the Court clarified that Sublett's supplemental complaint only adds a claim against a new party (Lewis) and did not alter or amend Sublett's claim in his original complaint against Howard. [D.E. No. 15] Thus, although presenting claims piecemeal in multiple complaints is strongly disfavored and is not ordinarily permitted, in this instance, the Court separately considers Sublett's original complaint against Howard [D.E. No. 1] and his supplemental complaint against Lewis. [D.E. No. 16]

2

*Key v. Shelby County*, 551 F. App'x 262, 265 (6th Cir. 2014) (citing *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 481 (6th Cir. 2003)).

However, contrary to Sublett's assertion, Howard did not raise any new arguments in his reply. Rather, Howard's reply addresses Sublett's claim made for the first time in his response that he submitted a second grievance related to his claims against Howard and that this grievance was rejected. [D.E. No. 19, 20] The alleged submission of this grievance is an issue raised by Sublett, not Howard. Thus, the arguments that Sublett identifies as "new" are simply Howard's response to arguments made by Sublett in his response. The filing of a sur-reply is therefore not necessary or appropriate, and Sublett's motion will be denied. "As many courts have noted, '[s]ur-replies ... are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Liberty Legal Found. V. Nat'l Democratic Party of the USA*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012). Particularly where, as here, Sublett has also filed an additional response without seeking leave of Court [D.E. No. 25], Sublett will not be permitted to flout the Court's procedural rules by filing a sur-reply where one is not warranted.

**I.**

In his original complaint, Sublett alleges that on July 3, 2018, while at LSCC, he proceeded from his room to the Institutional Religious Center ("IRC") for the Muslim Service. According to Sublett, the IRC has separate rooms for the Christian

3

service and the Muslim service. Sublett claims that he was the first of a group of Muslims to enter the IRC. Upon his entry to the IRC, Howard asked whether he was there for the service. When Sublett said that he was there for the Muslim service, Howard began to search Sublett. He claims that Howard then proceeded to search each of the other six or so Muslim inmates who were entering for the Muslim service. Sublett states that he observed that the inmates arriving for the Christian services entered the IRC and proceeded past Howard without being searched.

According to Sublett's own allegations, Sublett then "accosted C/O Howard and asked to have a complaint address to Howard," who told Sublett to "go ahead." Sublett states that he asked Howard why the Christians were able to go directly to their service without a search and further told Howard that he thought it was discriminatory that Howard was only patting down the Muslims and holding them up from their service. According to Sublett, Howard "became belligerent" and told Sublett to "shut up and get out, I'll search whoever I damn well please." Sublett states that he said, "Yes sir," and asked to speak with a supervisor. He claims that Howard responded "with a harsh tone" and screamed at him to "get out and find a supervisor yourself, get your ass out of here now." [D.E. No. 1 at p. 3]

On July 4, 2018, Howard issued Sublett a disciplinary report charging Sublett with "Charge: 4-08 – Nonviolent demonstration that could lead to disruption." [D.E. No. 1-1 at p. 1] After a July 12, 2018 hearing, Sublett was found guilty of the charge

4

alleged in the disciplinary report and sentenced to 15 days of disciplinary segregation. [*Id.* at p. 3] Sublett's appeal to the Warden was denied. [*Id.* at p. 4] According to Sublett, he stopped participating in the religious services on Tuesday "out of fear of further retaliation." [D.E. No. 1 at p. 4]

Based on these allegations, Sublett claims that Howard violated his First Amendment Freedom of Speech rights by issuing a disciplinary report against Sublett in retaliation for conveying an "oral grievance" regarding the alleged discriminatory conduct. [D.E. No. 1 at p. 5] He seeks injunctive relief in the form of ceasing the "retaliation for making an oral grievance with regards to discrimination to Muslim," as well as compensatory and punitive damages. [*Id.* at p. 8][2]

---

[2] After filing his complaint, Sublett filed a notice that he has been transferred from LSCC to the Green River Correctional Complex. [D.E. No. 27] Thus, his claims for injunctive relief are moot. While a claim for monetary damages may survive beyond an inmate plaintiff's transfer from one facility to another, an inmate's claim for declaratory or injunctive relief becomes moot when he or she is transferred away from the institution where the underlying complaint arose. *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (finding that the inmate's facility transfer mooted his request for injunctive relief where the inmate's claims were directed specifically towards his prior facility's policies and procedures); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("However, to the extent [the plaintiff] seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that [allegedly violated his constitutional rights]").

In Sublett's supplemental complaint [D.E. No. 16], he alleges that on September 9, 2018, he was speaking with another inmate (identified by Sublett as a "legal aid") discussing the next steps with regard to his lawsuit against Howard while standing directly in front of an officer station where Correctional Officer Audria Lewis was standing. After the legal aid requested that Sublett bring him all of the Orders from the Court, Sublett went to his room to retrieve them. According to Sublett, once he was in his room, Lewis deactivated his room door, preventing him from leaving. Sublett then pushed a button in his room connected to an intercom through which inmates may request assistance and was told by Lewis that, "if he keeps talking about the lawsuit against Howard (she) Lewis would have Sublett placed in segregation." Sublett states that he was then able to open the door to his room and, when he exited his room, Lewis and Correctional Officer Brent Valandingham were staring at Sublett and laughing. Sublett alleges that Lewis then told Sublett to stand by the officer cab and "don't say anything." When Sublett asked what he had done, Lewis responded, "Are you arguing with me, shut up, Ah, Ah, what I say?" Sublett states that he then remained quiet and asked to speak with a supervisor. He alleges that Lewis said that she would get a supervisor, then lock him up in segregation. Thereafter, Sublett was placed in administrative segregation.

Sublett states that he later received a write up in the form of a disciplinary report issued by Lewis stating that he was being argumentative and disrespectful.

6

Sublett was sentenced to 15 days of segregation predicated on a conviction of a Major Misconduct, which was upheld by the Warden. According to Sublett, Lewis made the false allegation in a disciplinary report that Sublett was argumentative and disrespectful when Sublett claims that he simply requested to speak with a supervisor. He claims that Lewis' action was in retaliation for Sublett's lawsuit against Howard. [D.E. No. 16 at p. 1-2]

In their motions, Defendants argue that Sublett's complaint and amended complaint must be dismissed because Sublett failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. [D.E. No. 14-1, 21-1] Lewis further argues that Sublett fails to state a claim of retaliation against her because he violated a legitimate prison regulation and, accordingly, was not engaged in "protected conduct" as is required to state a retaliation claim. [D.E. No. 21-1]

## II.

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material

fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994). However, if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## A.

Under the PLRA, a prisoner wishing to challenge the circumstances or conditions of his confinement must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006); *Campbell v. Barron*, 87 F. App'x 577, 577 (6th Cir. 2004). Exhaustion requires a prisoner to fully utilize the prison's inmate grievance system before filing suit to assert a civil claim. *Grinter v. Knight*, 532 F.3d 567, 577-78 (6th Cir. 2008). This requirement is mandatory and claims that have not been exhausted cannot be asserted in any court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Further, because "[p]roper exhaustion demands compliance with

8

an agency's deadlines and other critical procedural rules," the inmate must strictly follow the jail's rules with respect to the timelines, form, and procedures for inmate grievances. *Woodford v. Ngo*, 548 U.S. 81, 90 (2004).

Where the failure to exhaust is not self-evident from the complaint, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The Court must consider the evidence "in the light most favorable to the party opposing the motion.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). Nonetheless, the defendants can prevail if they can "prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F. 3d 583, 590 (6th Cir. 2017) (*citing Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012)); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The applicable grievance procedure here is provided by Kentucky Corrections Policy and Procedure ("CPP") 14.6, which states that the inmate grievance process "shall apply to all inmate grievances with the exception of grievances pertaining to health care concerns." [D.E. No. 14-2 at p. 7] As set forth in CPP 14.6, "Step 1" of the process, "Filing the Grievance and Informal Resolution," requires the grievance to be "in writing and legible" and must be contained on the grievance form and one

additional page if necessary. [*Id.* at p. 8] In addition, a grievance about a "personal and specific incident" must be filed within five business days after the incident occurs and a grievance shall pertain to only one issue. [*Id.*]

CPP 14.6 defines a "grievable issue" to include "any aspect of an inmate's life in prison that is not specifically identified as a non-grievable issue," and includes personal and social services needs; corrections and/or institutional policies and procedures, personal action by staff, staff conflict, or health care concerns. [D.E. No. 14-2 at p. 2]. Issues identified as "non-grievable" include "Disciplinary procedures, Adjustment Committee decision, Unit Hearing Officer decision, Adjustment Officer decision, or Warden's review of these decisions, incident where the grievant received a disciplinary report and report has been dismissed." [*Id.*]

### 1. Sublett's Claim against Howard in his Original Complaint

The facts regarding Sublett's exhaustion of his claim against Howard are a bit confusing, as the allegations in Sublett's complaint are somewhat contradictory. In Sublett's original complaint, he affirmatively checks "Yes" in response to the question, "Did you file a grievance regarding these facts under Kentucky Department of Corrections CPP 14.6 or an appeal of a disciplinary decision to the Warden under CPP 15.6?" [D.E. No. 1 at p. 6] However, immediately below that question, when asked to specify the steps he took with respect to the administrative remedy process after filing a grievance under CPP 14.6, he declines to indicate

10

whether he took any of the listed steps. [*Id.*] Rather, next to the blank to indicate whether he appealed the matter to the Warden, Sublett writes "('oral Grievance')!" [*Id.*] Then, when prompted to explain why he did not file a grievance, he states, "Sublett made an oral grievance to Jason S. Howard c/o and thereafter Sublett received a disciplinary write up which avert prevent the document Grievance." [*Id.*]

While this seems to suggest that his only grievance was the oral grievance that is the subject of his complaint, as proof of his attempt to his exhaust his administrative remedies, Sublett attaches to his complaint a copy of written Grievance No. 18-390, which indicates that it was received by prison officials on July 6, 2018 (which was prior to Sublett's July 12, 2018 disciplinary hearing). [D.E. No. 1-1] In this grievance, Sublett writes as follows:

> On 7/3/18, c/o Howard search all Muslim and stop of the Christian. Sublett made an oral Grievance to c/o Howard. However, Jason S. Howard became belligerent and spoke to Sublett in a harsh manner and told Sublett to get out and don't come back. Sublett received a disciplinary report in retaliation of Sublett speech as to discrimination.

[D.E. 1-1] Under "Action Requested," Sublett requested "to be able to seek oral redress from the D.O.C. without retaliation for free speech." [*Id.*] Thus, the subject matter of this grievance was the alleged retaliation by Howard in response to Sublett's "oral grievance."

On July 6, 2018, a "Grievance Rejection Notice" was issued with respect to Grievance Number 18-390, indicating that the issue that Sublett was grieving is non-

11

grievable because it concerns an Adjustment Committee decision, as it relates to the disciplinary report issued by Howard. [D.E. No. 1-1] However, at the bottom of the Grievance Rejection Notice, the Grievance Coordinator indicates that Sublett may return the grievance to the Grievance Coordinator or to the Grievance Aide once it has been corrected. [*Id*.] According to Howard, Sublett did not did so, thus he abandoned the administrative remedy process before exhaustion was complete. Howard argues that, because there is no genuine issue of material fact that Sublett did not complete the administrative remedy process as set forth in CPP 14.6, Sublett failed to exhaust his administrative remedies prior to filing his lawsuit and Howard is entitled to summary judgment in his favor.

In response, Sublett first claims that, because the basis of his grievance was an incident that is the subject of prison disciplinary proceedings, his claim was non-grievable, thus the grievance mechanism provided by CPP 14.6 was unavailable to him and he should not be required to exhaust this claim prior to bringing this lawsuit. However, Sublett overlooks that, while it is correct that an issue raised in a grievance related to the prison disciplinary process is non-grievable, neither is such a claim cognizable in a § 1983 action. To the extent that Sublett claims that the disciplinary report was improper because it was issued in retaliation for his "oral grievance," this is, in essence, a challenge to the disciplinary report itself. However, Sublett cannot challenge his disciplinary conviction in a § 1983 action; instead his remedy is to

12

pursue relief under state law and then, if necessary, file a habeas action. *See Smith v. Corrections Corp. of America*, 5 F. App'x 443, 444-45 (6th Cir. 2001) (discussing *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997)). And to the extent that Sublett takes exception to the procedures related to his disciplinary conviction, he is not currently eligible for relief on that basis because fails to allege that his disciplinary conviction has been overturned. *See Smith*, 5 F. App'x at 445; *see also Lee-Bey v. Gundy*, 80 F. App'x 435, 437 (6th Cir. 2003) (citing *Edwards*, 520 U.S. at 646).

In response to Howard's argument that, to the extent that Sublett had a grievable issue, Sublett could have pursued his administrative remedies with respect to that issue by correcting his grievance and re-submitting it to the Grievance Coordinator or Grievance Aide (as instructed by the Grievance Rejection Notice), Sublett claims that he did, in fact, re-submit a grievance regarding the "same subject matter of retaliation" and he received the same notice of rejection in response. [D.E. No. 19 at p. 6]

Sublett alleges that the documents that he attaches to his response submitted to this Court as Exhibit B1 [D.E. No. 19-1], Exhibit B2 [D.E. No. 19-2], and Exhibit B3 [D.E. No. 19-3] are copies of an Open Records Request; Grievance No. 18-753 he submitted on July 19, 2018; and the Grievance Rejection Notice rejecting Grievance No. 18-753. According to Sublett, on July 19, 2018, he submitted the

13

document that he purports to be Grievance No. 18-753. [D.E. No. 19-2] In this grievance, Sublett states that Howard discriminated against Muslims on July 3, 2018 by searching inmates entering the Islamic service (but not those entering the Christian service), which he claims is harassing and inconvenient for Sublett's religious practices as it takes time away from the hour allotted for service. [*Id.*] Although he states in the grievance that he asked to speak with Howard after he was done with the searches and told Howard that he was discriminating against Muslims, he does not raise his allegation that Howard retaliated against him by issuing a disciplinary report. [*Id.*] Sublett further claims that, in response to Grievance Number 18-753, he received a Grievance Rejection Notice on July 30, 2018, rejecting the grievance as non-grievable because it is relates to an Adjustment Committee decision, but this time omitting the language that Sublett could correct the error and re-submit the grievance. [D.E. No. 19-3]

However, the copies of the documents submitted by Sublett are neither authenticated as required by Federal Rule of Evidence 901, nor are they accompanied by any sort of verification that they are accurate copies of what Sublett purports them to be. While "[e]videntiary submissions by a party opposing a motion for summary judgment do not necessarily need to be in a form that is admissible at trial," that party must "set forth enough evidence that will be admissible at trial to demonstrate that a genuine dispute of material fact exists, and that a trial is necessary

**14**

to resolve the dispute." *See Hurick v. McKee*, No. 17-1396, 2018 WL 4908138, at *3 (6th Cir. Apr. 30, 2018), *reh'g denied* (Aug. 8, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)). Such evidence can take the form of "depositions, documents, electronically stored information, affidavits or declarations, stipulations ...admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). However, the United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that "unauthenticated documents do not meet the requirements of Rule 56(e)." *Alexander*, 576 F.3d at 558. "And even though pro se litigants are not held to the same standard as attorneys..., a pro se litigant may not disregard the rules of the court." *Hurick*, 2018 WL 4908138 at *2 (citations omitted).

In *Hurick*, the court was faced with a similar situation as in this case. In response to a motion for summary judgment, Hurick, a pro se prisoner plaintiff, submitted copies of letters that he claimed to have written prison officials informing them that he had received death threats and requesting protective custody. *Id.* at *2-*3. On appeal from the district court's grant of summary judgment in the defendants' favor on Hurick's Eighth Amendment failure to protect claims, the Sixth Circuit made it clear that "[s]uch unauthenticated and unverified documents do not create any genuine issue of material fact." *Id.* at *3.

15

In his reply, Howard states that the documentation submitted by Sublett that Sublett claims is the grievance he submitted on July 19, 2018, is only a partial submission, as there is nothing to indicate that the grievance had, in fact, been submitted in compliance with CPP 14.6, nor is there anything to indicate whether the grievance had been accepted or rejected. [D.E. No. 20] Howard further submits a sworn affidavit from Brittany McGraw, the grievance coordinator at LSCC who is, in her official capacity, the custodian of the grievance records at the LSCC. [D.E. No. 20-1] McGraw states that she reviewed the original records for grievances filed by inmates while housed at LSCC (that are made and retained in the regular course of business) and these records do not contain a grievance filed by Sublett on July 19, 2018. [D.E. No. 20-1]

Indeed, the need for an authentication requirement is particularly evident here, as not only does LSCC have no record of the grievance Sublett claims he submitted on July 19, 2018, but it is clear by simply looking at the documents submitted to the Court by Sublett that significant irregularities exist that raise troubling questions regarding both the authenticity of the documents and Sublett's motives for submitting them to the Court. For example, in the copy of the Open Records request attached to Sublett's response, Sublett seeks production of a copy of "Grievance filed against c/o Jason S. Howard for discriminating body search of myself and other Muslim on 7/3/2018; Request for this grievance is for the Court. Inmate Grievance

form and Rejection Notice of this grievance." [D.E. 19-1] However, the clause

"filed on 7-19-18. Gr. No. 18-753" are written in after the period at the end of the

document request:

I request to inspect the following document(s): 1) Six month Statement of inmate account, for 2) Grievance filed against Yo Jason S: Howard for descriminating body Search of my Self and other Muslim on 7/3/2018 ; Request is for this go grievance is for Court." Inmate Grievance form and Rejection Notice of this grievance, filed on 7-19-18, Gr. No. 18-753

Although Sublett quotes from this document in his response [D.E. No. 19 at

p. 6], his quote does not include the clause "filed on 7-19-18. Gr. No. 18-753." In

fact, the inclusion of this clause does not appear to be connected to the rest of the

request and, indeed, makes no sense in this context, as the request clearly seeks a

copy of the grievance that Sublett filed on 7/3/2018 and the rejection of that

grievance.

Turning to the document that Sublett claims is a copy of Grievance No. 18-

753, [D.E. No. 19-2] Howard point outs that there are significant irregularities with

the document attached to Sublett's response that suggest that it was never submitted

to prison officials as a grievance in compliance with CPP 14.6. First, on the face of

the form, the grievance number "16-473" (which is 2016 grievance number) is

scratched out with "18-753" written next to it. Next, in the McGraw affidavit

submitted by Howard, McGraw states that LSCC's records of grievance requests

17

submitted by inmates do not contain a grievance filed by Sublett on July 19, 2018. [D.E. No. 20-1] McGraw further states the document submitted by Sublett that he purports to be Grievance Number 18-753 does not include the appropriate signature. [D.E. No. 20-1] In addition, attached to McGraw's affidavit is a record of Sublett's housing assignments in 2018. [D.E. No. 20-5] Although the document that Sublett submitted to the Court as Grievance No. 18-753 (allegedly submitted on July 19, 2018), lists his housing assignment as "GA-C" (which was his housing assignment at that time), the document that he purports to be the Grievance Rejection Notice issued on July 30, 2018 lists his housing assignment as "RHU SM-F02," which was not his housing assignment in July 2018.

Moreover, McGraw attaches to her affidavit copies of three grievances filed by Sublett that were found upon McGraw's review of LSCC's grievance records, including Grievance No. 18-753, which is completely different from the document submitted to the Court by Sublett. The copy of Grievance No. 18-753 contained in LSCC's grievance records was filed on November 30, 2018, and the subject matter of the grievance is the procedure for filing a grievance alleging that a disciplinary report was retaliatory (a completely different subject matter from the grievance submitted with Sublett's response as Grievance No. 18-753). [D.E. No. 20-3] At the time that Sublett filed the November 30, 2018 Grievance No. 18-753, he was

housed in unit "RHU SM-F02," which is the housing assignment that he lists on the grievance. [D.E. No. 20-3, 20-5]

In addition, the November 30, 2018 Rejection Notice for Grievance Number 18-753 as maintained in LSCC's records also states that Sublett is housed in RHU SM-F02 and indicates that the grievance is being returned, with the following areas marked that need correction before re-submission: "Shall pertain to no more than one (1) issue"; "Must be complete"; and "Other: Note enough information provided in the grievance (previous grievance number that was rejected, date of rejection." [D.E. No. 20-3] Finally, the bottom of the grievance states the following: "You may return the grievance to the Grievance Coordinator or to the Grievance Aide once it has been corrected." [*Id.*]

Most concerning about the document submitted by Sublett as "Exhibit B3" [D.E. No. 19-3] to his response to Howard's motion for summary judgment (which he claims is the Grievance Rejection Notice rejecting Grievance Number 18-753) is that it appears on its face to be a copy of the November 30, 2018 Rejection Notice that has been redacted and altered. For example, the date on the document appears as follows:



19

Although Sublett claims that this document was issued on 07/30/2018, there is a large white circle around "07" and the line under the "07" (as well as the slash mark next to it) do not appear to have been typed, but instead appear to be handwritten. [D.E. No. 19-3]

Next, while the November 30, 2018 Rejection Notice issued for Grievance No. 18-753 as maintained by LSCC marks several corrections that may be made before resubmission, the copy submitted by Sublett does not include these markings and, in fact, large white spaces appear in their place, again consistent with a document redaction:



In addition, while the bottom of the November 30, 2018 Rejection Notice for 18-753 includes language indicating that the grievance could be corrected and resubmitted, this language is missing entirely from the document submitted by Sublett and is replaced with a large white box with clear edges, again consistent with alterations of the document:

grievance on behalf of other inmates
SAP approval, denial, and SAP dismissals
PREA investigation findings

**Brittany Sturgill, CUA I**
Grievance Coordinator                              Grievance Aide                    $Ex. B3$

Finally, the housing assignment listed on the document submitted by Sublett

(RHU SM-FO2) is not where he was housed in July 2018, which is when he claims

this document was issued, but is where he was housed in November 2018, which is

when the November 30, 2018 Rejection Notice for 18-753 was issued.

All of these irregularities demonstrate why unauthenticated documents are

insufficient to create a genuine issue of material fact for purposes of defeating a

motion for summary judgment. *Alexander*, 576 F.3d at 558. Indeed, no reasonable

jury could find that Sublett exhausted his administrative remedies on the basis of the

documentation submitted by Sublett.

Even putting all of the irregularities of Sublett's submission aside, even if the

documentation that he submits to the Court is what he says it is, it is still insufficient

to demonstrate complete exhaustion of his administrative remedies with respect to

either his retaliation claim or his discrimination claim against Howard. Because

"[p]roper exhaustion demands compliance with an agency's deadlines and other

critical procedural rules," the inmate must strictly follow the jail's rules with respect

21

to the timelines, form, and procedures for inmate grievances. *Woodford*, 548 U.S. at 90. Of course, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. CPP 14.6 requires an inmate to "include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1." [D.E. 14-2 at p. 8]

However, the subject matter of the grievance that Sublett claims to have submitted on July 19, 2018, is the discriminatory treatment of Muslims; it is silent with regard to Sublett's claim retaliation claim. [D.E. No. 19-2] Thus, even if Sublett had submitted this grievance, it would be insufficient to exhaust his remedies with respect to his retaliation claim. Moreover, with respect to Sublett's discrimination claim, CPP 14.6 requires that a grievance about a "personal and specific incident" to be filed within five business days after the incident occurs. [D.E. No. 14-2 at p. 8] However, Sublett's July 19, 2018 Grievance was filed 16 days after the July 3, 2018 incident (and 13 days after the Rejection Notice was issued for Grievance No. 18-390), thus it was untimely and Sublett's discrimination claim was not properly exhausted.

22

For all of these reasons, the Court finds that Sublett has failed to create a genuine issue of material fact regarding his exhaustion of his administrative remedies with respect to his claims again Howard. Accordingly, Howard's motion for summary judgment will be granted.

One final note, despite the Court's very serious concerns regarding Sublett's submission of documentation to the Court in support of his response, the Court declines to sanction Sublett at this time. Certainly, the Court must afford additional latitude to parties untrained in the law, *Haines v. Kerner*, 404 U.S. 519, 596 (1972), as their misguided actions may be the consequence of inexperience or lack of specialized knowledge rather than borne of a desire to harass or delay. But this forgiving approach to compliance with procedural rules has never "[been] interpreted so as to excuse mistakes by those who proceed without counsel," *McNeil v. United States*, 508 U.S. 106, 113 (1993), and the courts have never allowed "the right of self-representation [to be used as] a license to abuse the dignity of the courtroom." *Faretta v. California*, 422 U.S. 806, 835 n.46 (1975). Even a court's "special solicitude" towards *pro se* litigants "does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *Pandozy v. Segan*, 518 F. Supp. 2d 550, 558 (S.D.N.Y. 2007) (imposing pre-filing restrictions against a litigant "unwilling[] to accept unfavorable rulings on her claims. Each time her claims are dismissed, she

repackages them with new labels, against new defendants, and in new courts, as part of an 'ever-broadening conspiracy theory.'")

Any person proceeding *pro se* who repeatedly files frivolous motions or other pleadings, and certainly any person who submits pleadings in bad faith or for an improper purpose, abuses the right to represent himself without counsel and the privilege of proceeding without payment of the filing fee and imposes a heavy burden upon the resources of the court at the expense of other litigants with potentially meritorious claims. Sublett is advised that the Court may impose sanctions necessary and appropriate to deter such conduct, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991), including the imposition of monetary sanctions, future filing restrictions, and/or holding Sublett in contempt of court. *Id.*; *See also* Fed. R. Civ. P. 11 (authorizing sanctions for violations of Rule 11, including for presenting a pleading, motion or other paper for an improper purpose or for presenting factual contentions with no evidentiary support); Fed. R. Civ. P. 56(h) (authorizing the imposition of sanctions, including payment of the responding party's attorney's fees and/or contempt, for submission of an affidavit or declaration in bad faith or solely for delay). Although the Court declines to do so at this time, Sublett is advised that the Court will not hesitate to revisit this decision if warranted.

2. Sublett's Retaliation Claim against Lewis in his Supplemental Complaint

24

In his supplemental complaint against Lewis, Sublett alleges that, after a confrontation between Sublett and Lewis on September 9, 2018, Lewis made a false allegation in a disciplinary report that Sublett was argumentative and disrespectful when Sublett requested to speak with a supervisor. He claims that Lewis' action was in retaliation for Sublett's lawsuit against Howard. As a result of this disciplinary report, Sublett was sentenced to 15 days of segregation predicated on a conviction of a Major Misconduct, which was upheld by the Warden. [D.E. No. 16 at p. 1-2]

In her motion for summary judgment, Lewis also relies on the affirmative defense of exhaustion and argues that there is no evidence of even an attempt to file a grievance regarding retaliatory conduct by Lewis. [D.E. No. 21-1] She also relies on an affidavit submitted by LSCC records custodian Brittany McGraw, which attaches copies of the three grievances filed by Sublett while housed at LSCC, none of which address the alleged confrontation with Lewis on September 9, 2018. [D.E. No. 21-4]

In his two responses filed in response to Lewis' motion for summary judgment, Sublett does not deny that he did not file a grievance regarding his retaliation claim against Lewis. Rather, he claims that the grievance procedure was unavailable with respect to this claim because it is a "non-grievable" claim related to a disciplinary proceeding. [D.E. No. 24, 25] Sublett argues that "[d]isciplinary

25

report have their own appellate procedure in which obviates the policy set forth in C.P.P. 14.6." [D.E. No. 24 at p. 8] He claims that, had he filed a grievance, it would have been rejected as non-grievable, thus excusing his failure to pursue administrative remedies with respect to this claim. [*Id.*]

However, Sublett's arguments fail for the same reasons cited above. Sublett's claim that Lewis "made a false allegation" in a disciplinary report is a challenge to the propriety of the disciplinary report itself. While it is true that this issue is non-grievable as it relates to a prison disciplinary matter, neither is cognizable in a § 1983 action. Rather, to challenge his disciplinary conviction, Sublett must first pursue relief under state law and then, if necessary, file a habeas action. *See Smith*, 5 F. App'x at 444-45 (6th Cir. 2001). Again, to the extent that Sublett takes exception to the procedures related to his disciplinary conviction (including the basis for the report itself), he is not currently eligible for relief on that basis because fails to allege that his disciplinary conviction has been overturned. *Id.* at 445.

Because the Court finds that Sublett failed to exhaust his administrative remedies with respect to his claim against Lewis, it need not address Lewis' argument that the filing of the disciplinary report against Sublett by Lewis was not retaliatory.

Accordingly, it is hereby **ORDERED** as follows:

1.      Sublett's motion for leave to file a sur-reply [D.E. No. 22] is **DENIED**;

26

2.  Defendant Jason S. Howard's motion for summary judgment [D.E. No. 14], is **GRANTED**;

3.  Defendant Audria Lewis's motion for summary judgment [D.E. No. 21], is **GRANTED**;

4.  Sublett's complaint [D.E. No. 1] and supplemental complaint [D.E. No. 16] are **DISMISSED**.

5.  All pending motions or requests for relief in this case are **DENIED AS MOOT**.

6.  This action is **STRICKEN** from the Court's active docket.

7.  Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

This ⟨23rd⟩ day of September, 2019.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge

27